# Fairlamb, Appellant *v.* Smedley Construction Company.

*Bankruptcy—Liens—Preferences—Act of June 4, 1901, sec. 28, P. L. 431.*

A suit brought under the provisions of the Act of June 4, 1901, sec. 28, P. L. 431, by a subcontractor or material man against a contractor with summons to the owner as garnishee, is a "legal proceeding" within the meaning of the national bankrupt act of 1898; and if the suit is begun within four months prior to the filing of a petition in bankruptcy against the contractor, no lien accrues in favor of the plaintiff in the suit by reason of the summons to the owner as garnishee.

Argued Dec. 9, 1907. Appeal, No. 47, Oct. T., 1907, by plaintiff, from order of C. P. No. 5, Phila. Co., Dec. T., 1906, No. 457, making absolute rule to dissolve attachment in case of R. Crosby Fairlamb et al., trading as P. H. Fairlamb Company v. Smedley Construction Company, defendant, Swarthmore College, garnishee. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Rule to dissolve attachment.

From the record it appeared that on October 12, 1906, a petition in bankruptcy was filed against the Smedley Construction Company, and on the same day the company was adjudicated a bankrupt. On November 27, 1906, plaintiffs brought an action against the Smedley Construction Company under the Act of June 4, 1901, sec. 28, P. L. 431, and summoned Swarthmore College as garnishee. From the record of this suit it appeared that the construction company had a contract with the college to erect a certain building in Delaware county, and that the college was indebted to the construction company on account of work on the building. The trustee of the bankrupt intervened by leave of court, and took a rule to dissolve plaintiff's attachment. This rule was made absolute, and plaintiffs thereupon appealed.

VOL. XXXVI—2

18 FAIRLAMB, Appellant, *v.* SMEDLEY CONSTRUC. CO.

Assignment of Error—Opinion of the Court. [36 Pa. Superior Ct.

*Error assigned* was the order of the court.

*M. Hampton Todd*, for appellant.—This lien is not void by reason of the bankrupt law of 1898: Crane Co. v. Smythe, 11 Am. B. R. 747; First Nat. Bank of Bridgeport v. Perris Irrigation Dist., 107 Cal. 55 (40 Pac. Repr. 45); Newport Wharf, etc., Co. v. Drew, 125 Cal. 585 (58 Pac. Repr. 187).

*E. Clinton Rhoads*, with him *Henry Wiener, Jr.*, for appellee.—The adjudication in bankruptcy vests in the trustee in bankruptcy title to the fund in controversy: Dombach v. Smedley Construction Co., 24 Lancaster Law Rev. 201; In re Roeber, 121 Fed. Repr. 449; In re Lesser, 108 Fed. Repr. 201; In re Johnson, 108 Fed. Repr. 373; In re Pekin Plow Co., 112 Fed. Repr. 308; State Bank of Chicago v. Cox, 143 Fed. Repr. 91; In re Lukens, 138 Fed. Repr. 188; Chesapeake Shoe Co. v. Seldner, 122 Fed. Repr. 593; In re Haynes, 123 Fed. Repr. 1001; Hymes Buggy & Implement Co., 130 Fed. Repr. 977; In re Winfield Mfg. Co., 140 Fed. Repr. 185.

OPINION BY HEAD, J., February 28, 1908:

The national bankrupt act of 1898 provides, inter alia, "that all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien, shall be deemed wholly discharged and released from the same." A fortiori, if the legal proceedings, which were intended to result in the acquisition of a lien, were not begun until after an adjudication that the owner of the attached property was a bankrupt, no lien would be created thereby.

It is to be observed that it is only liens "obtained through legal proceedings" begun after the adjudication, or within four months prior to it, that are avoided. That is where the lien begins with the proceeding, flows from it, is created by it and has had no previous or separate existence apart from it.

But where the lien has come into existence, more than four months prior to the filing of the petition in bankruptcy, by the creative power of a statute, as incident to a judgment, levy or otherwise, and the legal proceeding, begun within four months, or even after the adjudication, is intended but to preserve or enforce such lien, the language of the act of congress quoted has no application.

Thus, it is conceded, that if a building be begun more than four months prior to the filing of such a petition against the owner or contractor, the mechanics and material men within the purview of our statute acquire liens, not by virtue of any legal proceeding begun by them, but by the force and power of the statute. These liens, all alike, are fastened by the law upon the building and curtilage as of the date when the first work was done on the ground. And the law that created them nurtures and protects them for a specified time, without any act of co-operation on the part of the claimant: Keller v. Denmead, 68 Pa. 449. If he desires to preserve his lien beyond the period named in the statute, then he must take the steps directed. But in taking these or others to enforce payment of the debt secured by his lien, he may proceed, notwithstanding an intervening bankruptcy, because the act of congress puts nothing in his way.

So if a judgment be lawfully entered, a lien is thereby created against all of the real estate of the debtor in the county; and if that lien attached, more than four months before a petition be filed, it can be enforced later and the act of congress presents no obstacle. But such a judgment does not create a lien on the goods or chattels, or rights and credits of the debtor in the county, or on his real estate in a neighboring county. To secure a lien upon these the plaintiff must resort to the legal process the law has placed at his command; to his writs of fi. fa., attachment execution or testatum fi. fa. But all of these liens are "obtained through legal proceedings," and if so obtained within four months of the filing of a petition in bankruptcy, they will be stricken down by the paramount law: Mencke v. Rosenberg, 202 Pa. 131.

In the present case, the defendant was adjudicated a bank-

rupt on October 12, 1906. More than a month later the plaintiff began this action of assumpsit against it, and having filed the affidavit required by section 28 of our Act of June 4, 1901, P. L. 431, relating to liens of mechanics, etc., summoned Swarthmore College, as a garnishee. As a result of this proceeding the appellant claims to have attached, acquired a lien upon, and thus secured, to the exclusion of the trustee in bankruptcy, all moneys thereafter coming due and owing by the garnishee on account of the building contract under which defendant was operating, at the time of its bankruptcy.

To save the lien, he claims, from the operation of the bankruptcy act, the learned counsel for appellant argues that it was not "obtained through legal proceedings," but that, as in the case of the ordinary mechanic's lien, it was created by the statute and came into existence as soon as the work was done or material furnished by the plaintiffs, and that the filing of the affidavit and service of the summons on the garnishee were but the steps, directed by the act, to preserve and enforce the lien that had its inception, ex vi statuti, long before.

The theory is ingenious, but to our minds unsound. To adopt such a construction would create difficulties, insurmountable we fear, in attempting to execute this section in harmony with the remaining sections of the act and the general scope of the legislative intent. But without stopping to advert to them and without undertaking to draw any conclusions from reasoning ab inconvenienti, we think the language of the section itself and every reason, that can be drawn, by analogy, from the consideration of like legislation, lead to a different construction.

The suit provided for may be brought by anyone who has furnished labor or material to a building, no matter how many degrees beyond a subcontractor he may stand removed from the owner. He may bring it at any time when the action would not be barred by the general statute of limitations. He does not proceed in rem. The section nowhere uses the word "lien." The action is personal, but has engrafted upon it an attachment process to reach choses in action of the defendant in the hands of a third person. This goes out in limine, and in this respect it resembles a foreign attachment. In other respects, the pro-

ceeding is akin to an attachment execution. The language used is as follows: "In any suit brought to recover for labor, the plaintiff, if he files of record at the time of beginning the suit an affidavit setting forth the facts, may summon also therein the owner or any other party indebted to the defendant for labor done or materials furnished, to such structure: the effect of service of which writ, upon such third party, shall be to attach the moneys then or thereafter becoming due such defendant."

In this language, we can see no foundation broad enough for the superstructure built upon it by way of argument. The act declares that the attachment is an "effect," and that the cause from which it springs is the service of the writ. Why seek a distant and obscure source for that, the origin of which is so pointedly stated? The act nowhere refers to or contemplates any right of the plaintiff to a lien upon a fund other than or prior to that which results from and is obtained by the act of serving the writ upon the party owing the money. Why a lien, incident to the attachment therein provided for, should be carried back to some time anterior to the service of the writ, and thus made to differ radically from the liens secured by other writs of attachment or execution we are unable to see. We are necessarily led to the conclusion, that the attachment secured by the appellant was "obtained through legal proceedings"; that, by virtue of the paramount force of the bankruptcy act of congress, such attachment would be ineffectual as against the trustee of the bankrupt; and that the learned court below was right in dissolving it at the instance of the latter.

We are asked by the learned counsel for appellee to declare the twenty-eighth section of the act of 1901 unconstitutional and void as special legislation, and because no warning of the legislation therein contained is to be found in the title. On the first ground stated, it has been so declared in a careful opinion by Judge SULZBERGER in Tennessee Producers' Marble Co. v. Grant, 14 Pa. Dist. Rep. 453. We see no occasion to dispose of that question now. It is not necessary to sustain the judgment now before us. We therefore decline to consider it and rest

our conclusion on the ground, that allowing the section to stand, it furnishes no foundation for this appeal.

The assignments of error are dismissed, and the order or decree dissolving the attachment is affirmed. The costs of this appeal to be paid by the appellant.